## CHARLES L. WARD v. JAMES PECK.

That portion of the forty-fifth section of the General Road act which authorizes the overseer to enter upon private property and cut and make a drain, is void as being inconsistent with the constitutional provision that declares that private property cannot be taken for public purposes without compensation.

On case certified from the Circuit Court of the county of Essex.

Argued at June Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *Joseph B. Gallagher.*

For the defendant, *John W. Taylor.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit was brought against the defendant, who was president of the Essex Road Board, to recover damages for the opening, on the property of the plaintiff, a ditch or drain for the purpose of carrying off water from a public road known as Bloomfield avenue, in the county of Essex. It will be assumed for present purposes that the defendant in his official capacity was clothed with the power of an overseer of the highways in the performance of the act

complained of, and that he did nothing but what he was warranted to do by force of the forty-fifth section of the general road law. *Rev., p.* 1005. That provision is in these words, viz. : " It shall be lawful for the overseer of the highways, or other person by his order, to enter on lands adjacent to such highways, and to cut, make, scour out, cleanse, and keep open such gutters, drains and ditches therein as shall be sufficient to convey or draw off the water from the said highway with the least disadvantage to the owner of the said land, and the owner and every other person except such overseer is hereby prohibited from filling up, stopping or obstructing such gutter, drain or ditch, under the penalty," &c.

It thus appears that authority is here given to the officer to cut or make a drain, for the purpose mentioned, over land where no ditch or drain exists. This is what was done in the present case, and the only question, therefore, is whether the section quoted, so far as relates to this matter, is still in force in this state.

There can be no doubt that such an appropriation of land as that just described is a taking of private property for public use. By laying the drain, the public acquire a right to a perpetual easement in the property burdened, and the owner *pro tanto* has been deprived of his property. The right to enter upon the property and clean out a drain already legally in existence would obviously not be a taking of the property, and it would seem that no doubt could be entertained that by force of the sanction contained in the legislative clause just cited, such act would be altogether lawful. But the inquiry is, How can the land of the citizen be permanently applied to the public use unless upon the basis of compensation being made to him ? The authority conferred upon the overseer in the section referred to appears to have originated in colonial times, and has always been an accompaniment of the Road act, and it is deemed that in regard to the feature now in question, it is to be taken as a part of the power given by the old law to sequester, without rendering any equivalent for it, so much private property as was requi-

site for the public roads.   The power to appropriate the land for a drain was supplementary to the power to take the land for the road itself.   Under the prevalence of the ancient laws, compensation was to be made for neither of such appropriations.   But by section 16 of article I. of the constitution of this state, adopted in the year 1844, it is declared " that private property shall not be taken for public use without just compensation ; but land may be taken for public highways, as heretofore, until the legislature shall direct compensation to be made."   Since the introduction of this constitutional provision the legislature has directed that when land be taken for public roads it shall be paid for.

By force of this clause of the constitution, effectuated, as it has been, by this subsequent legislation, I see no reason to doubt that every vestige of the ancient *jus publicum,* to seize the property of the citizen without rendering to him its value, has been entirely abolished in this state.   And if the power existed to make this appropriation of the land in question, it would be a sheer anomaly in our jurisprudence, and it would stand plainly opposed to the spirit of the most essential constitutional clause just recited.   But in point of fact the right so to appropriate this property is as inconsistent with the letter as it is with the spirit of this declaration of the organic law, for if we are to regard this authority conferred on the overseer as an authority separate from the authority to construct the road, then plainly it is abrogated by the general declaration that private property shall not be taken for public use without compensation, and if it is to be taken as a part of the power to construct the road itself, it is specially annulled by the latter clause of the section made effectual by the legislation which ensued.

Let the Circuit Court be advised that the defendant had no legal authority to make the drain in question.